## In Re Anonymous No. 48 D.B. 82

Disciplinary Docket No. 48 D.B. 82.

McDONALD, *Member*, September 15, 1983—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your Honorable Court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

The within petition for discipline was filed on August 10, 1982 against [Respondent] the within respondent (respondent), with respect to respondent's failure to pursue claims on behalf of [A] related to an accident in which she was involved on April 2, 1976. Also included in the same complaint were allegations that respondent neglected real estate matters entrusted to him by [B].

The petition for discipline alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility with respect to the [A] matters:

A. D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

B. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on a lawyer's fitness to practice law;

C. D.R. 6-101(A)(3), dealing with conduct involving neglect of a legal matter;

D. D.R. 7-101(A)(1), dealing with a lawyer intentionally failing to seek the lawful objectives of his client through reasonably available means;

E. D.R. 7-101(A)(2), dealing with a lawyer intentionally failing to carry out a contract of employment entered into with a client for professional services;

F. D.R. 7-101(A)(3), dealing with a lawyer intentionally prejudicing or damaging his client during the course of the professional relationship; and

G. D.R. 9-102(B)(4), dealing with a lawyer failing to promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

The petition for discipline alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility with respect to the [B] matters:

A. D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation; and

B. D.R. 6-101(A)(3), dealing with conduct involving neglect of a legal matter entrusted to a lawyer.

Hearing Committee [ ] was assigned to hear these charges and, upon due notice to all parties, the hearing was conducted on November 4, 1982.

On March 16, 1983, hearing committee [ ] filed its report, in which it found respondent's conduct violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(2), and D.R. 7-101(A)(3) with respect to the [A] complaint. The hearing committee did not find violations of D.R. 7-101(A)(1) or D.R. 9-102(B)(4).

With regard to the [B] allegations, the hearing committee found that none of the alleged Disciplinary Rule violations had been established. Based on the violations in the [A] matter, hearing committee [ ] recommended that respondent receive a suspension for three months and one day.

Exceptions were filed to the findings and recommendation of hearing committee [ ] by respondent and oral argument was held thereon before a panel of the board on May 31, 1983. Also, on May 31, 1983, a petition to reopen the proceedings for the purpose of taking additional testimony was filed by respondent. The petition to reopen was considered by this board on June 15, 1983 and the matter remanded to hearing committee [ ] for further proceedings.

Hearing committee [ ] reconvened and accepted additional evidence offered by respondent in the form of a phychological report. On August 8, 1983, hearing committee [ ] filed it supplemental report reaffirming its earlier recommendations. No exceptions have been filed to the supplemental report.

Accordingly, this board, after an independent consideration of this mater, adopts the following findings of fact and conclusions of law of hearing committee.

## II. FINDINGS OF FACT

A. [A] Complaint:

1. [A] was injured in an automobile accident on April 2, 1976.

2. Approximately two weeks later, [A] consulted respondent who advised her on the "No-fault" threshhold.

3. Complainant called respondent approximately 60 times to inquire about her case but generally received no response.

4. On September 15, 1976, the claimant's No-fault carrier terminated payments to her.

5. Shortly thereafter, respondent undertook to represent the complainant.

6. In late 1980 or early 1981, respondent told claimant that he had filed suit for her.

7. In June, 1981, respondent told the claimant he had received $1,900 for her from an insurance company and would send the check to her.

8. Because claimant did not receive the check, she called respondent who told her it must have gotten lost in the mail and that he would personally deliver a check to her.

9. On October 28, not having received a check from respondent, the claimant wrote to him demanding the return of her file. (Exhibit 2, admitted into evidence T 29).

10. In November of 1981, respondent told the claimant that an insurance company had offered $4,900 for her lost wages. That check was not delivered to the claimant.

11. On January 6, 1982, respondent again told the claimant that he had filed suit for her, but this was false.

12. Respondent paid the aforesaid $1,900 out of his own pocket to the claimant to make her believe that he had filed suit.

13. Respondent continuously lied because of a psychological problem which caused him to escape and not to face the facts as they existed.

14. Respondent is presently undergoing counseling.

15. Respondent intended to pay the additional money to the claimant out of his own pocket.

16. After the statute of limitations expired on the cause of action, respondent became aware that it had run.

17. Missing the statute of limitations caused respondent to "go into a shell."

18. Respondent voluntarily transferred to inactive status in November of 1982.

B. [B] Complaint:

1. The transaction involving the real estate purchased by [B], the complainant, was closed June 24, 1983.

2. Respondent was to obtain title insurance.

3. In late August or early September, 1981, the complainant requested his policy.

4. On January 20, 1982, the complainant threatened to file a complaint against respondent if the policy was not received by January 21, 1982.

5. There were delays in ordering the title policy because clearance certificate as to the seller was required.

6. Respondent actually ordered the policy on January 6, 1982.

### III. CONCLUSIONS OF LAW

Respondent has violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(2), and D.R. 7-102(A)(3), with respect to the [A] complaint. No violations of the Disciplinary Rules were established with respect to the [B] complaint.

## IV. DISCUSSION

The hearing committee has recommended unanimously that respondent be suspended for three months and one day. Respondent contends that the appropriate discipline should include probation and not suspension. Respondent claims that the neglect of his practice resulted from a depressive disorder which rendered him incapable of functioning effectively. He contends that he is now under active counseling, is able to manage his practice, and suspension is inappropriate.

This board is mindful of the fact that respondent has received two previous informal admonitions on March 18 and September 9, 1982 with respect to other instances of neglect. Furthermore, the psychological report submitted to the hearing committee, the report of [C] Ph.D., clinical psychologist, concludes that respondent suffers from "rather paralyzing levels of anxiety" and "the patient has not made substantial therapeutic progress."

Accordingly, the recommendation of hearing committee that respondent be suspended from active practice for three months and one day is accepted and adopted by this board.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania accepts the recommendation of hearing committee [ ] that respondent be suspended from practice for a period of three months and one day and recommends that disposition in this matter to the Supreme Court of Pennsylvania. It is further recommended that respondent pay all costs of investigaton and prosecution in this matter.

Messrs. Daniels, Krawitz and Curran did not participate in the adjudication.

ORDER

ROBERTS, *C.J.*, And now, October 6, 1983, upon consideration of the recommendation of the Disciplinary Board dated September 15, 1983, it is hereby ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of four months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.